302 F.3d 58
 UNITED STATES of America, Appellee,
v.
Horace RICHARDS, aka "Desmond Wolfe" and "Jimbo"; Fabian Anderson, aka "Wayne"; Judith Balfour, aka "Donna"; Rudolph Booth, aka "Shortman"; Gregory Brissett, aka "Starkey"; Desmond Brown, aka "D"; Ronald Clarke, aka "Dread"; Melvin Douglas; Tony Palmer, aka "Reginald Dumas" and "Spoonhead"; Everton Hamilton, aka "Father"; Desmond Heywood, aka "Mike" and "Springfield"; Delroy Howell, aka "Devon"; Damian Lazarus; Kevin Lazarus; Lenworth Lewis, aka "Dave"; Arminda Lopez, aka "Mindy"; Donovan Lue, aka "Rudeboy"; Richard Perrone; Murphy Rhoden, aka "Bashey"; Michael Robinson; Dennis Rowe, aka "Dicky"; Dawn Schwalb; Courtney Simms, aka "Royal" and "Royo"; Derek Stewart, aka "Scrooge"; Wayne Williams, aka "Penn," Defendants,
Courtney Greenwood and Rudolph Anderson, aka "Pinky" and "Bo Pee," Defendants-Appellants.
 Docket No. 01-1144(L).
 Docket No. 01-1314(Con).
 Docket No. 01-1315(Con).
 United States Court of Appeals, Second Circuit.
 Argued: May 6, 2002.
 Decided: August 27, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Jeremiah Donovan, Old Saybrook, CT, for Defendant-Appellant Greenwood.
 Michael G. Moore, Hartford, CT, for Defendant-Appellant Anderson.
 David A. Ring, Assistant United States Attorney, Hartford, CT (John A. Danaher III, United States Attorney for the District of Connecticut; Jeffrey A. Meyer, of counsel, on the brief), for Appellee.
 Before: FEINBERG, KEARSE and CARDAMONE, Circuit Judges.
 FEINBERG, Circuit Judge.
 
 
 1
 Defendants Courtney Greenwood and Rudolph Anderson appeal from judgments of conviction following separate jury trials on drug charges in the United States District Court for the District of Connecticut (Chatigny, J.). Prior to his trial, Anderson also pleaded guilty to being unlawfully present in the United States after deportation. On appeal, Greenwood and Anderson challenge their respective convictions and sentences. For the reasons stated below, we affirm.
 
 I. Background
 
 2
 This case arises out of a 1998-1999 federal investigation of the drug trafficking activities of Horace Richards (aka "Desmond Wolfe"), a major Jamaican drug dealer who transported truckloads of marijuana from Texas to Connecticut. In connection with that investigation, a federal grand jury in the District of Connecticut returned an indictment in November 1999 charging 27 persons with multiple counts of drug trafficking and firearms offenses. Greenwood was charged in two counts with: (1) conspiracy to possess with intent to distribute, and to distribute, 100 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 846; and (2) aiding and abetting the possession with intent to distribute, and the distribution of, marijuana, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Anderson was charged in one count with conspiracy to possess with intent to distribute, and to distribute, 1000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 846.
 
 
 3
 In May 2000, the district court granted Greenwood's motion for a separate trial, and he proceeded to jury trial in his severed case in July 2000.
 
 
 4
 In April 2000, Anderson was additionally charged in a separate indictment with being unlawfully present in the United States after deportation, in violation of 8 U.S.C. § 1326. The Government subsequently filed a notice that the enhanced penalty provisions of § 1326(b)(1) were applicable to the case because Anderson had a prior felony drug conviction. In January 2001, Anderson pleaded guilty to the § 1326 charge. In February 2001, Anderson proceeded to jury trial on the drug conspiracy charge.
 
 A. Greenwood's Trial
 
 5
 At Greenwood's trial, Government witnesses established the following. In 1999, a federal task force led by the Federal Bureau of Investigation (FBI) investigated the drug trafficking activities of Richards. From July 1999 to October 1999, the FBI conducted court-authorized wiretaps on telephones used by Richards and Ronald Clarke (one of Richards's associates), as well as on a business telephone at Perrone Trucking, the company that Richards was using as a cover to transport the marijuana. During the course of the wiretaps, the FBI learned that Fabian Anderson ("Fabian"),[1] who was not associated with Richards, planned to use a truck that he bought from Perrone to transport marijuana from Texas to Connecticut. This information came to light in part because agents heard Richards and Clarke discuss that Fabian was using one of Richards's drivers, Michael Robinson, to transport the load.
 
 
 6
 In the early morning of September 26, 1999, Connecticut State Police Troopers, along with federal agents, conducted a stop of Fabian's truck on a highway soon after it arrived in Connecticut. Robinson, who was driving the truck, consented to a search, and the officers found 85.62 kilograms of marijuana among a shipment of limes. Robinson began cooperating immediately and eventually arranged to meet Fabian at a location in Hartford, Connecticut to deliver the load. Soon after arriving at the location, Robinson recognized a silver Honda driving past them and told the officers that Fabian's partner, Greenwood, was in the car. A marked police car attempted to stop the car, but Greenwood, who was driving, tried to flee. He eventually lost control of the vehicle and crashed into a utility pole. He was arrested along with Fabian, a passenger in the car, who was apprehended after a 200-yard foot-chase.
 
 
 7
 Additionally, both Robinson and Fabian testified at the trial pursuant to plea and cooperation agreements. Robinson testified that he drove truckloads of marijuana for Richards and Fabian, and that when he met Fabian for the first time, Fabian introduced Greenwood to him as Fabian's "partner, Courtney." At that first meeting, Robinson explained that he had "pulled a load" for Richards, and Fabian told him that was "the same thing we do." About three weeks later, after making several legitimate trips, Robinson was asked by Fabian to make a drug-run to Texas, and Fabian gave Robinson $27,000 in cash to take with him. Fabian promised Robinson that he would meet him in Texas, and that if Fabian were unavailable, Robinson "must get in touch with Courtney [Greenwood], his partner," who would "take care of it." Meanwhile, without telling Fabian, Robinson also accepted around $5,000 to buy some marijuana for Ronald Clarke.
 
 
 8
 Robinson further testified that Fabian then obtained approximately 200 pounds of marijuana in Texas, about 18 pounds of which was for Clarke, even though Fabian was told it was for Robinson. After the truck was loaded in Texas, Fabian again told Robinson that he "must" make the delivery to "his partner, Courtney," if Fabian (who planned to meet the truck in Connecticut) did not return to Connecticut in time. While Robinson was on his way back to Connecticut, Greenwood called him on his cell phone. Greenwood told Robinson that Fabian had been stopped at the airport and asked if everything was alright with the truck. Robinson then spoke to Clarke and explained that he was instructed to deliver the marijuana to Greenwood in Connecticut. That conversation was intercepted by wiretap and played for the jury during Robinson's testimony.
 
 
 9
 Fabian testified that he first met Greenwood in Jamaica and met him again in Hartford in 1998, three years after Fabian started dealing in marijuana. At that time, Fabian gave Greenwood, free of charge, a half-pound of marijuana to sell. The two eventually became involved in marijuana trafficking together. Around April 1999, Fabian told Greenwood that he was thinking about buying his own truck so that he could operate independently from other dealers. At about the same time, Greenwood gave Fabian approximately $2,800 to reinvest in the next marijuana shipment. In August 1999, Fabian bought a truck from Rick Perrone for approximately $65,000.
 
 
 10
 Fabian also testified that (a) he told Robinson that he should contact Greenwood, Fabian's partner, if Fabian himself was not reachable; (b) Greenwood drove Fabian to the airport for his trip to Texas to obtain the marijuana; (c) he used the $2,800 that Greenwood had given him as part of the cash needed to buy the marijuana in Texas; and (d) he called Greenwood to let him know that everything was alright after he was released from custody at the airport and that Greenwood told him the truck was on its way.
 
 
 11
 Fabian further testified that, when the truck approached Hartford on September 26, Fabian and Greenwood drove in a red sports utility vehicle, which Fabian had rented to transport the marijuana, to meet Robinson. The vehicle contained a gun, which Greenwood had placed there earlier in the night. After spotting police cars at the Hartford meeting location, they left to switch cars, and returned to the scene in Greenwood's girlfriend's Honda. A police car tried to stop them as soon as they drove by, and Greenwood, who was driving, fled from the scene and crashed.
 
 
 12
 Greenwood did not testify at the trial, but defense counsel argued that Greenwood was an innocent dupe who was not associated with the marijuana operation. According to the defense, Greenwood was sought out by Fabian after the federal agents had arrested Robinson, because Fabian believed that Robinson had been robbed and Greenwood and his 1992 Honda would not attract the attention of the robbers. The defense further argued that Greenwood fled from the police because his visa had expired and he did not have a driver's license, and that Fabian was falsely accusing Greenwood in order to obtain a reduced sentence for cooperating.
 
 B. Anderson's Trial
 
 13
 As in Greenwood's trial, Government witnesses testified at Anderson's trial regarding background information about Richards's drug trafficking activities and the wiretaps in place as part of the federal investigation.
 
 
 14
 The Government's evidence also established that Anderson, who allegedly sold marijuana for Richards, was arrested in August 1999 on an outstanding motor vehicle warrant and again in his apartment in October 1999. At the time of the first arrest, Anderson was found to possess $1,663 in cash, even though he told the arresting officer that he was unemployed. Upon the latter arrest, various items were seized from Anderson's apartment pursuant to a search warrant. The seized items included a suitcase and bag containing marijuana residue, an electronic scale, a hand-held scale with green leaf fragments, three cellular phones, a beeper, gun ammunition, pre-paid calling cards, and a business card for Rick Peronne.
 
 
 15
 Also put into evidence were records and bills which, according to the Government, showed that Anderson paid his expenses in cash or money orders, purchased expensive clothing with cash, and possessed several pagers and cell phones which he had used extensively and changed frequently.[2] Telephone records also showed that, between April 1998 and October 1999, Anderson (using six different phones) and Richards called each other 438 times.[3]
 
 
 16
 Moreover, Everton Hamilton, who worked for Richards and assisted him in delivering marijuana to customers, testified that Anderson sold marijuana for Richards. Hamilton testified that he was present when Richards delivered 20 pounds of marijuana to Anderson, and that he personally delivered about 15 to 20 pounds of marijuana to Anderson for Richards. The Government also introduced recordings of wiretapped calls between Anderson and Richards to further demonstrate Anderson's involvement in and knowledge of Richards's drug trafficking operation.
 
 C. Jury Verdicts and Sentencing
 
 17
 Greenwood was convicted on both the conspiracy and aiding and abetting charges, and Anderson was convicted of conspiracy, the sole narcotics charge against him. The jury in Greenwood's case also found, in a special verdict form, that his conspiracy offense involved more than 50 but less than 100 kilograms of marijuana, rather than the amount (100 kilograms or more) charged in the indictment. In March 2001, Greenwood was sentenced to two concurrent terms of 41 months imprisonment, one for each conviction.
 
 
 18
 The jury in Anderson's case found, in a special verdict form, that it was reasonably foreseeable to Anderson that his conspiracy offense involved 1000 kilograms or more. At Anderson's sentencing in May 2001, however, the district court reduced this amount to 100 kilograms or more, ruling that there was insufficient evidence to support the amount found by the jury. The district court also (a) applied a 10-year minimum sentence for the conspiracy conviction, pursuant to 21 U.S.C. § 841(b)(1)(B), because Anderson had been convicted of a prior felony drug offense in Connecticut; and (b) rejected Anderson's claim, with regard to his illegal reentry offense, that the prior state drug conviction was not an "aggravated felony" for sentencing guideline purposes.[4] Anderson was sentenced to two concurrent terms of 10 years imprisonment, one for each conviction.
 
 II. Discussion
 
 19
 On appeal, Greenwood argues that (1) his drug conspiracy conviction must be reversed because the jury found it involved a lower amount of marijuana than was charged in the indictment; (2) his motions for acquittal on the aiding and abetting charge should have been granted because the Government failed to prove that he contributed to the success of the crime; and (3) at sentencing, the district court erroneously attributed to him 8.4 kilograms of marijuana that was being transported on behalf of Clarke, a rival drug dealer. Anderson argues that (1) there was insufficient evidence to support his drug conspiracy conviction; (2) the district court erroneously applied, based on the prior state drug offense, a 10-year minimum sentence on the conspiracy conviction and an aggravated felony sentencing enhancement on the illegal reentry conviction; and (3) he should not be subject to illegal reentry penalties because he was not previously deported and he properly entered the country after inspection.
 
 A. Greenwood's Appeal
 1. Drug Conspiracy Conviction
 
 20
 Although the indictment charged Greenwood with conspiring to possess with intent to distribute, and to distribute, 100 kilograms or more of marijuana, the jury was told to choose, in a special verdict form, whether the conspiracy involved 100 kilograms or more, 50 to 100 kilograms, or less than 50 kilograms. As already indicated, the jury chose the middle option. Greenwood argues on appeal, as he did in the district court, that the conspiracy conviction was invalid because a conspiracy to possess with intent to distribute 50 to 100 kilograms is neither the same crime as, nor a lesser included offense of, conspiracy to distribute 100 kilograms or more.
 
 
 21
 Greenwood assumes that the substantive crime of possession with intent to distribute a smaller amount of a controlled substance is a lesser included offense of possession with intent to distribute a larger amount. He argues, however, that the offense of conspiracy is different because an agreement to possess a smaller amount is an entirely different agreement from one to possess a larger amount. Greenwood contends that some drug dealers may agree to purchase only bulk quantities of narcotics because the risks of obtaining and distributing small amounts would outweigh the potential financial benefits. Therefore, according to Greenwood, such dealers should face criminal liability only for agreeing to the larger amount. Under that logic, Greenwood asserts that he could not have been guilty for agreeing to possess or distribute an amount of marijuana smaller than what was charged in the indictment. For the following reasons, we reject this argument.
 
 
 22
 Before the Supreme Court decided Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), we routinely held that drug quantity was not an element of a drug trafficking conspiracy offense. See, e.g., United States v. Campuzano, 905 F.2d 677, 679 (2d Cir.1990) ("Section 841(a) of Title 21 prohibits the distribution of any amount of cocaine and in no way requires proof of a particular quantity of narcotics as an element of the conspiracy to distribute"); United States v. Story, 891 F.2d 988, 992 (2d Cir.1989) ("The only elements of a section 846 narcotics conspiracy offense are the existence of a conspiracy and the defendant's willful joining it."). Even when an indictment specified a particular drug quantity, the quantity was not deemed an element of the offense. See United States v. Boonphakdee, 40 F.3d 538, 542 (2d Cir.1994) (although indictment charged conspiracy to distribute 1.7 kilograms of heroin, "[i]t would have been proper for the jury to convict appellants on a finding that appellants intended to distribute only one gram of heroin"); Campuzano, 905 F.2d at 679 ("When an indictment does allege that a particular quantity is involved, the effect is only to put the defendant on notice that the enhanced penalty provisions of Section 841(b) may apply.").
 
 
 23
 In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S.Ct. 2348. Following that guidance, we held in United States v. Thomas, where no drug quantity was charged in the indictment, that "if the type and quantity of drugs ... may be used to impose a sentence above the statutory maximum for an indeterminate quantity of drugs, then the type and quantity of drugs is an element of the offense that must be charged in the indictment and submitted to the jury." 274 F.3d 655, 660 (2d Cir.2001) (en banc). However, the "constitutional rule of Apprendi does not apply where the sentence imposed is not greater than the prescribed statutory maximum for the offense of conviction." Id. at 664.
 
 
 24
 Therefore, drug quantity becomes an element of the offense under § 841 "only where" it may be used to impose a sentence above the applicable statutory maximum.[5] United States v. Outen, 286 F.3d 622, 635 (2d Cir.2002); see also United States v. McLean, 287 F.3d 127, 133 (2d Cir.2002) ("As long as the sentence imposed is not greater than the maximum penalty authorized by statute for the offense charged ... a district court may consider drug quantity in determining a defendant's relevant conduct for sentencing purposes pursuant to U.S.S.G. § 1B1.3(a)."). In Thomas, where no quantity was charged, the applicable statutory maximum was the 20-year penalty under § 841(b)(1)(C) for an unspecified amount of cocaine or crack. See 274 F.3d at 660 n. 2.
 
 
 25
 In this case, drug quantity was charged in the indictment, but the jury found that a lesser quantity was involved. Neither Thomas nor any case in this Court after Thomas appears to have addressed what the applicable statutory maximum is in this precise situation, and we can think of at least three reasonable possibilities: (1) the 40-year maximum prescribed by § 841(b)(1)(B) for 100 kilograms or more of marijuana, the amount charged in the indictment; (2) the 20-year maximum prescribed by § 841(b)(1)(C) for 50 to 100 kilograms of marijuana, the amount found by the jury; or (3) the five-year maximum prescribed by § 841(b)(1)(D) for an indeterminate amount of marijuana. See Outen, 286 F.3d at 637-39 (statutory maximum for indeterminate amount of marijuana is five years). However, we need not decide which maximum applies because Greenwood's sentence of 41 months was below all three. Therefore, drug quantity was not an element of the offense.[6]
 
 
 26
 Because drug quantity was not an element in Greenwood's conspiracy offense, the offense alleged in the indictment was, for purposes of Greenwood's claim, the same as the offense for which he was convicted. Therefore, Greenwood's claim that he was improperly convicted of an offense that was neither the same as, nor a lesser-included offense of, the offense charged in the indictment has no merit.
 
 2. Aiding and Abetting Conviction
 
 27
 Greenwood also argues that the district court erred when it denied his motions for acquittal on the charge that he aided and abetted Fabian, Clarke, Robinson and others in the crime of possessing with intent to distribute marijuana. Greenwood contends that the Government failed to prove the aiding and abetting charge because it had not shown that he contributed to the success of the crime. According to Greenwood, the evidence demonstrated at best that he was planning on aiding and abetting Fabian's and Robinson's possession of marijuana but that law enforcement agents prevented him from doing so by their seizure of the marijuana.
 
 
 28
 Title 18, United States Code, Section 2(a) provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." To sustain a verdict on an aiding and abetting theory, the evidence must show that "the underlying crime was committed by someone other than the defendant and that the defendant himself either acted or failed to act with the specific intent of advancing the commission of the underlying crime." United States v. Pipola, 83 F.3d 556, 562 (2d Cir.1996). Moreover, a defendant challenging his conviction for insufficiency of the evidence bears a heavy burden, and we may overturn the conviction "only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Hernandez, 85 F.3d 1023, 1030 (2d Cir.1996).
 
 
 29
 Greenwood does not meet this heavy burden. There was substantial evidence at trial that Fabian and Robinson possessed the truckload of marijuana with the intent to distribute it. Specifically, the evidence showed that both Fabian and Robinson possessed the marijuana initially in Texas, that Robinson had actual possession of it during the drive to Connecticut, and that Fabian constructively possessed it during that drive. See United States v. Gordils, 982 F.2d 64, 71 (2d Cir.1992) (possession with intent to distribute narcotics may be established by proof of defendant's constructive possession, which exists when defendant "knowingly has the power and the intention at a given time to exercise dominion and control over [the narcotics], either directly or through others") (citations omitted).
 
 
 30
 Furthermore, there was substantial evidence that Greenwood aided Fabian's and Robinson's possession by (1) personally providing part of the cash payment used to obtain the marijuana; (2) acting as Fabian's partner in soliciting Robinson's services regarding transportation of the marijuana-filled truck; (3) communicating with Fabian and Robinson to coordinate successful delivery of the truck; (4) being available to receive the load himself in the event Fabian was not available; and (5) accompanying and ultimately driving Fabian to pick up the load.
 
 
 31
 Given this evidence, we cannot say that no rational jury could have found Greenwood guilty of aiding and abetting the possession. Furthermore, Greenwood's argument that the evidence demonstrated only that he was planning to aid and abet Fabian's and Robinson's possession of the marijuana after it arrived in Connecticut misses the point. In so planning to aid the possession after the truck arrived in Connecticut, Greenwood was simultaneously aiding the actual and constructive possession of the marijuana that Fabian and Robinson had before the truck reached its destination. We thus find no basis for reversing the conviction.
 
 3. Sentencing
 
 32
 After the jury determined that Greenwood's conspiracy conviction involved between 50 and 100 kilograms of marijuana, the parties disputed the exact amount that should be attributed to Greenwood for sentencing purposes. The Government contended that Greenwood should be held liable at least for the 85.62 kilograms seized from the truck upon its arrival in Connecticut, as well as for additional planned shipments. That calculation put Greenwood in the 80-100 kilogram range, which corresponded to a base offense level of 24. See U.S.S.G. § 2D1.1(c)(8). Greenwood, however, contended that the quantity of the marijuana should be based only on what was seized from the truck and should be offset by at least 8.4 kilograms, since that amount was designated for Clarke, unknown to Fabian. Thus, Greenwood argued that the correct base offense level was 22, based on the range of 60-80 kilograms. See U.S.S.G. § 2D1.1(c)(9).
 
 
 33
 The district court adopted the Government's view, finding merit in its position that Greenwood "was a knowing, active participant in what was intended to be not just this one shipment, but more shipments." The court thus found the base offense level to be 24, granted Greenwood a two-level "minor participant" reduction, and sentenced Greenwood primarily to 41 months, which was at the bottom of the applicable Guidelines range. On appeal, Greenwood reasserts his argument regarding the 8.4 kilograms attributable to Clarke.
 
 
 34
 Because drug quantity was not a required element of the offense under Thomas (since Greenwood's sentence did not exceed the applicable statutory maximum), see II.A.1, supra, the district court needed to find drug quantity by only a preponderance of the evidence for sentencing purposes. McLean, 287 F.3d at 133; United States v. Desimone, 119 F.3d 217, 228-29 (2d Cir.1997). We review a sentencing court's factual findings regarding drug quantity only for clear error. McLean, 287 F.3d at 133; United States v. Prince, 110 F.3d 921, 924 (2d Cir.1997).
 
 
 35
 Greenwood has failed to establish that the district court clearly erred by attributing 80-100 kilograms of marijuana to him. His argument that he should be liable for less than 80 kilograms because he had no knowledge that 8.4 kilograms was purchased for Clarke must be rejected. In holding Greenwood responsible for the greater amount, the district court relied primarily on its finding that Greenwood, as Fabian's assistant, joined in an agreement between Fabian and Robinson to make multiple shipments from Texas to Connecticut, rather than just the one shipment that led to his arrest. We find no clear error with this finding, which essentially makes the dispute over Clarke's 8.4 kilograms irrelevant. We thus affirm the district court's calculation of Greenwood's sentence.
 
 B. Anderson's Appeal
 1. Sufficiency of Drug Conspiracy Evidence
 
 36
 Anderson argues that there was insufficient evidence to support his conviction for conspiring with Richards and others to distribute marijuana. Specifically, Anderson contends that the evidence at trial demonstrated that he tried to join the marijuana conspiracy, but that his repeated requests to do so were denied by Richards.
 
 
 37
 "A conviction for conspiracy must be upheld if there was evidence from which the jury could reasonably have inferred that the defendant knew of the conspiracy ... and that he associat[ed] himself with the venture in some fashion, participat[ed] in it ... or [sought] by his action to make it succeed." United States v. Podlog, 35 F.3d 699, 705 (2d Cir.1994) (internal quotations and citations omitted). Moreover, as already discussed, a defendant bears a heavy burden when challenging his conviction for insufficiency of the evidence.
 
 
 38
 Anderson does not meet this burden. The evidence at his trial included: (1) Hamilton's testimony that Anderson received marijuana from Richards for resale; (2) law enforcement testimony that various incriminating items, some with marijuana residue, were seized from Anderson's apartment; (3) telephone records that showed Anderson spoke with Richards over 400 times during the relevant period; and (4) wiretapped calls between Richards and Anderson that demonstrated that Anderson had some knowledge of Richards's marijuana distribution operation. In denying Anderson's post-trial motion for a judgment of acquittal based on insufficiency of the evidence, the district court pointed out that Anderson "must acknowledge the testimony of Everton Hamilton," which "places [Anderson] in this conspiracy." We agree with the district court that a reasonable trier of fact could credit Hamilton's testimony. Therefore, the evidence was sufficient to support the jury's verdict on the conspiracy conviction.
 
 
 39
 Anderson also argues that there was insufficient evidence for the district court to find that the quantity of marijuana reasonably foreseeable to him was 100 kilograms or more.[7] At the sentencing proceeding below, the district court agreed with Anderson that the evidence was insufficient to support the jury's finding that it was reasonably foreseeable that the overall conspiracy he joined involved at least 1,000 kilograms of marijuana. The court essentially concluded that the evidence did not sufficiently prove that Anderson knew about the large quantities of marijuana being transported on the trucks. However, the court did find sufficient support for a quantity finding of 100 kilograms or more, based on evidence regarding the amount of marijuana Anderson personally received and the amounts he should have known others were receiving, given his overall knowledge of Richards's marijuana operation. The lower quantity finding reduced Anderson's minimum sentence from 20 to 10 years. Compare § 841(b)(1)(A) with § 841(b)(1)(B) (taking into account a prior conviction for a felony drug offense, discussed below).
 
 
 40
 When addressing a claim that there was insufficient evidence to support a district court's drug quantity finding, we are mindful that the district court "has broad discretion to consider all relevant information," and the "quantity determination will not be disturbed unless it is clearly erroneous." United States v. Pico, 2 F.3d 472, 475 (2d Cir.1993). Moreover, a "court is entitled to consider all transactions engaged in by [a defendant] or by his coconspirators ... if the transactions were either known to him or reasonably foreseeable to him." Podlog, 35 F.3d at 706 (internal quotations and citation omitted).
 
 
 41
 The district court carefully considered the arguments of both parties regarding the quantity, and in doing so lowered Anderson's sentence significantly. Given the evidence before it, the district court's determination that it was reasonably foreseeable to Anderson that there was at least 100 kilograms of marijuana involved in the conspiracy was not clearly erroneous.
 
 2. Drug Conspiracy Sentence
 
 42
 Anderson argues that the district court improperly imposed a 10-year mandatory minimum sentence for his conspiracy conviction, pursuant to 21 U.S.C. § 841(b)(1)(B).[8]
 
 
 43
 Because Anderson's conviction involved 100 kilograms or more of marijuana, a 10-year minimum sentence is required if he committed the conspiracy violation "after a prior conviction for a felony drug offense has become final." § 841(b)(1)(B). The term "felony drug offense" means "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marijuana, or depressant or stimulant substances." 21 U.S.C. § 802(44) (emphasis added).
 
 
 44
 In 1997, Anderson was convicted of possession of a hallucinogenic substance, in violation of the Connecticut General Statutes § 21a-279(b), and was sentenced to two years in jail suspended and three years of probation. A first-time violation of § 21a-279(b) is punishable by up to five years imprisonment and is therefore a felony under Connecticut law. See Conn. Gen.Stat. § 53a-25(a) ("An offense for which a person may be sentenced to a term of imprisonment in excess of one year is a felony.").
 
 
 45
 Anderson concedes that his previous drug offense was a felony under state law, but argues that the 10-year minimum was improperly applied here because a federal offense for the same conduct he was convicted for in Connecticut would have been only a misdemeanor. See 21 U.S.C. § 844 (penalties for simple possession of a controlled substance). But Anderson's 1997 conviction was under state, not federal, law, and the plain language of 21 U.S.C. § 802(44) provides that a state felony drug offense is sufficient to warrant a sentence enhancement under § 841(b)(1)(B). See United States v. Brown, 937 F.2d 68, 69-70 (2d Cir.1991) (state drug offense that was a felony under New Jersey common law was a felony drug offense for purposes of § 841(b)(1)(B)). Thus, the 10-year minimum sentence was properly applied.
 
 3. Illegal Reentry Conviction and Sentence
 
 46
 According to the Government, Anderson was ordered removed from the United States in February 1999 after he attempted to enter the country using fraudulent documents. As a result of the removal, he was prohibited from reentering the United States for five years without the express consent of the Attorney General. Nonetheless, he obtained a visa and reentered the United States in August 1999. He did not, however, apply to the Attorney General for express permission to reenter the country.
 
 
 47
 Thereafter, Anderson was charged with being unlawfully present in the United States after deportation in violation of 8 U.S.C. § 1326. In September 2000, he filed a motion to dismiss the charge, claiming that his valid visa was proof that the Attorney General had authorized his admission and that he did not have the specific intent to enter illegally. The district court denied that motion in November 2000, and in January 2001, Anderson pleaded guilty to the charge.
 
 
 48
 On appeal, Anderson argues for the first time that he was not guilty of illegal reentry, despite his guilty plea, because he was not previously deported. Rather, according to Anderson, he was denied admission under another name — Johnny McGhee.[9] Anderson also raises his previous contention that his entry was authorized by the Attorney General when INS agents issued his visa and stamped his passport. Finally, he contests the imposition of a 16-level enhancement at his sentencing pursuant to U.S.S.G. § 2L1.2 for illegally reentering after having committed an "aggravated felony" (his Connecticut drug possession offense).[10]
 
 
 49
 "It is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge, and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the court's jurisdiction." Hayle v. United States, 815 F.2d 879, 881 (2d Cir. 1987) (citations omitted). Anderson's written plea agreement expressly provided that he reserved his right to appeal his sentence, but did not allow him to challenge the conviction or the district court's rejection of his motion to dismiss the charge. By pleading guilty, therefore, Anderson waived his right to challenge his illegal reentry conviction on appeal.[11]
 
 
 50
 The plea agreement, however, does allow Anderson to appeal his sentence and, therefore, the judge's conclusion that his prior Connecticut drug conviction constituted an aggravated felony under § 2L1.2 of the Sentencing Guidelines. However, even if the 16 level enhancement had not been applied, Anderson would still have been sentenced to 10 years due to the mandatory minimum, discussed above, for the drug conspiracy conviction. (The sentences on the drug conspiracy and illegal reentry convictions are concurrent.) Anderson, in fact, concedes that his overall sentence would be unaffected if we affirm the district court's ruling that he "was part of [the] conspiracy and his knowledge and participation involved at least 100 kilograms." As indicated above, we are so affirming. Therefore, invalidating the 16-level enhancement on the illegal reentry sentence would have no effect on his 10-year term. Anderson thus has no persuasive grounds for a sentencing remand.
 
 
 51
 Judgments affirmed.
 
 
 
 Notes:
 
 
 [1]
 We refer to Fabian Anderson by his first name to avoid confusing him with appellant Rudolph Anderson
 
 
 [2]
 The defense, however, claimed that Anderson was poor and unable to pay his bills so that he could not have been reaping profits from selling marijuana
 
 
 [3]
 The parties stipulated that, between January 1998 and October 1999, Richards purchased, transported and distributed 1000 kilograms or more of marijuana
 
 
 [4]
 For sentencing purposes, Anderson's conspiracy and illegal reentry cases were joined, and a motion by the Government to consolidate them on appeal was subsequently granted. Also, after Anderson filed his notices of appeal, his case was consolidated with Greenwood's. A motion by Greenwood to sever his appeal from Anderson's was later denied
 
 
 [5]
 This rule clearly applies to drug conspiracy offenses under § 846 as well as to the substantive crimes of § 841, becauseThomas itself involved a § 846 conviction. See 274 F.3d at 660.
 
 
 [6]
 This remains true even though quantity was charged in the indictment and submitted to the jury; neither was required byApprendi or Thomas in cases where the sentence is below the applicable statutory maximum, and the Government need not prove allegations of an indictment that are "surplusage" to the essential elements of the offense charged. United States v. Helmsley, 941 F.2d 71, 92 (2d Cir. 1991).
 
 
 [7]
 Anderson challenges the quantity determination only on insufficiency of the evidence grounds and does not raise any issues underApprendi or Thomas.
 
 
 [8]
 At oral argument, Anderson also contended that he should not be subject to the penalties of § 841(b) at all, becauseconspiracy is not an unlawful act under § 841(a). See § 841(a) (stating in relevant part that it shall be unlawful for any person knowingly or intentionally "to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance"). This claim must be rejected, however, because § 846 plainly states that any person who "conspires to commit any offense" defined in the subchapter that includes § 841 "shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the ... conspiracy."
 
 
 [9]
 The Government points out, however, that § 1326(a) applies to aliens who were "denied admission" as well as those who were "deported."
 
 
 [10]
 At oral argument, Anderson's attorney claimed that he made these arguments regarding the illegal reentry conviction and sentence in an initial brief before this Court, even though they only appeared in his reply brief in the copies sent to the panel members. The presiding judge therefore asked Anderson's attorney to submit a copy of the initial brief that he claimed contained the missing arguments, and he agreed to do so. However, to this date no such brief has been received by the Court
 
 
 [11]
 One of the essential elements of the offense that Anderson pleaded guilty to, for example, was being "an alien who was deported from the United States." Thus, he has waived the argument he now raises on appeal (that he was not deported)