11-860-cr
U.S. v. Solano-Fell

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall Courthouse, 40 Foley Square, in the City of New York, on the 25th day of January, two thousand thirteen.

Present:
> ROBERT A. KATZMANN,
> RAYMOND J. LOHIER, JR.,
> > *Circuit Judges*,
> JED S. RAKOFF,[*]
> > *District Judge*.

---

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                          No.  11-860-cr

MANOLO RIJO, aka Jose A. Davila-Martinez,
VICTOR A. SPEIGHT,

> *Defendants*,

ARSENIO Y. SOLANO-FELL, aka Grandes
Ligas,
> *Defendant-Appellant*.

---

[*]The Honorable Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

For Defendant-Appellant:            PETER J. TOMAO, Garden City, NY

For Appellee:                       FRANK H. SHERMAN, Assistant United States Attorney,
                                    *for* William J. Hochul, Jr., United States Attorney for
                                    the Western District of New York, Rochester, NY


Appeal from a judgment of the United States District Court for the Western District of New York (Larimer, *J.*).

**ON CONSIDERATION WHEREOF**, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court be and hereby is **AFFIRMED**.

Defendant-Appellant Arsenio Y. Solano-Fell appeals from a judgment of conviction entered on February 22, 2011 by the United States District Court for the Western District of New York (Larimer, *J.*). After trial, a jury convicted Solano-Fell of conspiring to distribute and to possess with intent to distribute five kilograms or more of cocaine. On appeal, Solano-Fell raises numerous issues. First, he objects to the admission of evidence discovered in an allegedly unconstitutional search of his vehicle. Second, he argues that the district court misinterpreted several of the Federal Rules of Evidence. Finally, he challenges the district court's determination at sentencing that he was accountable for the distribution of more than fifty kilograms of cocaine.[1] We assume the parties' familiarity with the relevant facts, the procedural history, and the issues presented for review.

---

[1] While Solano-Fell also contends that his trial attorney provided ineffective assistance of counsel in violation of the Sixth Amendment, *see generally Strickland v. Washington*, 466 U.S. 668 (1984), the parties have not developed the record necessary to fully review that claim. Thus, we "decline to hear the claim, permitting [him] to raise the issue as part of a subsequent petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255." *United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) ("In light of the way our system has developed, in most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance.").

We turn first to Solano-Fell's objections to the admission of certain evidence and testimony at trial. Because other evidence—to which Solano-Fell does not object—overwhelmingly demonstrated his guilt, we conclude that any errors by the district court were harmless.[2] Where, as here, a potential evidentiary error implicates a defendant's constitutional rights, "we must be convinced that the error was harmless beyond a reasonable doubt." *United States v. Reifler*, 446 F.3d 65, 87 (2d Cir. 2006). "In assessing the error's likely impact, we consider the nature of the violation and the context in which it occurred, taking into account . . . the strength of the government's case, the degree to which the [evidence] was material to a critical issue, the extent to which the [evidence] was cumulative, and the degree to which the government emphasized the erroneously admitted evidence in its presentation of the case." *Id.* (citation omitted). While no one factor is dispositive, we focus principally on the strength of the Government's case. *Id.*

Here, three witnesses independently identified Solano-Fell as a member of the relevant conspiracy. Luis Rodriguez testified that Manolin Rijo, an alleged co-conspirator, had revealed that Rijo, Solano-Fell, and Jose de la Cruz had made $300,000 distributing cocaine. Rodriguez also told the jury that, on a separate occasion, Solano-Fell asked him to help sell "3 kilos of cocaine." Next, Victor Speight testified that he had purchased cocaine from de la Cruz and Manolin Rijo until 2002, when de la Cruz was arrested and Manolin Rijo was murdered. Thereafter, from 2003 to 2007, Speight began purchasing cocaine from Solano-Fell and Manolo Rijo, obtaining five to seven kilograms every other week. De la Cruz, Manolin Rijo, Manolo

---

[2]Given our conclusion that any error was harmless, we need not address the issue of whether the search of Solano-Fell's car that uncovered the secret compartment containing cocaine exceeded the scope of his consent. *See generally Florida v. Jimeno*, 500 U.S. 248, 250-51 (1991).

Rijo, and Solano-Fell all used the same system to communicate with Speight. Finally, Carlos Torres testified that Solano-Fell told him that Manolo Rijo, who had delivered a kilogram of cocaine to Torres, worked for Solano-Fell.

The testimony of Rodriguez, Speight, and Torres all indicated that Solano-Fell conspired with others to sell cocaine. Moreover, aspects of each witness's testimony corroborated the details of the others'. Speight and Torres, for example, both identified Manolo Rijo as Solano-Fell's partner, and Rodriguez and Speight both testified that de la Cruz and Manolin Rijo participated in the conspiracy until de la Cruz's arrest and Manolin Rijo's death. While the Government introduced other evidence in order to show that Solano-Fell knowingly and intentionally joined the conspiracy, the district court explicitly forbade the jury from considering that evidence "as substitute for proof that Mr. Solano-Fell committed the conspiracy charged." J. App'x at 1138. Thus, when the jury found that Solano-Fell participated in the charged conspiracy, *see United States v. Rodriguez*, 392 F.3d 539, 545 (2d Cir. 2004) (identifying participation as an element of conspiracy), it necessarily credited the testimony of Rodriguez, Speight, and Torres. Because the jury believed that Solano-Fell engaged in at least some of the activities these three witnesses described, we have no trouble concluding beyond a reasonable doubt that the jury would have also found, based solely on the testimony of these witnesses, that Solano-Fell did so knowingly and intentionally. One cannot credibly attribute the actions these witnesses described to ignorance or mistake. Thus, the other evidence of Solano-Fell's knowledge and intent was merely "cumulative," and any error in its admission was harmless. *See Reifler*, 446 F.3d at 87.[3]

---

[3]Because the evidence convincingly demonstrated Solano-Fell's guilt, we further reject his argument that no reasonable jury could have decided to convict. *United States v. Finley*, 245 F.3d 199,

Although we conclude that any evidentiary error was harmless, we note that the district court departed from our prior cases in at least two respects. First, the district court found that Federal Rule of Evidence 404(b) permitted the Government to introduce evidence that Solano-Fell had possessed cocaine after the termination of the charged conspiracy.[4] According to the district court, this evidence was potentially relevant to the question of whether Solano-Fell had participated in the charged conspiracy knowingly. We review a district court's application of Rule 404(b) only for "abuse of discretion.*" United States v. Mercado*, 573 F.3d 138, 141 (2d Cir. 2009).

Rule 404(b) prohibits the use of "[e]vidence of a crime, wrong, or other act" in an effort to prove that, "on a particular occasion," a person acted "in accordance" with whatever trait of "character" produced that crime, wrong, or other act. Nonetheless, in appropriate circumstances, prosecutors may use such evidence for other limited purposes, including to show a defendant's "knowledge." Fed. R. Evid. 404(b)(2). A district court "abuses its discretion when it admits 'other act' evidence with a high possibility of jury misuse but with only slightly more probative value than other evidence on the same issue." *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011).

Here, the evidence had a "high possibility of jury misuse" and very little "probative value." Solano-Fell's possession of cocaine after the end of the conspiracy indicated little, if anything, about his knowledge at an earlier point in time. Instead, the Government apparently invited the jury to conclude that, because Solano-Fell had possessed drugs at the time of his

202-03 (2d Cir. 2001).

[4]The Government never charged Solano-Fell based on this instance of possession, and thus the jury considered the cocaine only in connection with the conspiracy charge.

5

arrest, he was a drug dealer, and thus had knowingly participated in the charged conspiracy. But this chain of reasoning identifies drug-dealing as a trait of Solano-Fell's "character" in order to show that, during the charged conspiracy, he acted "in accordance" with that trait. In other words, the jury was likely to draw the precise inference that Rule 404(b)(1) forbids. Given the danger of presenting this evidence to the jury and the strength of other evidence showing Solano-Fell's knowledge, the district court's decision to admit the evidence under Rule 404(b) constituted an abuse of discretion.

Second, the district court likely erred when it permitted a police officer to testify under Federal Rule of Evidence 702 as an expert on how drug dealers "typically" transport drugs to Rochester. J. App'x at 943. "[A]lthough 'the operations of narcotics dealers are a proper subject for expert testimony under Fed. R. Evid. 702, we have carefully circumscribed the use of such testimony to occasions where the subject matter of the testimony is beyond the ken of the average juror.'" *United States v. Mejia*, 545 F.3d 179, 191 (2d Cir. 2008) (quoting *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991)). Specifically, we have prohibited experts from giving an account "of a typical drug transaction that mirror[s] the testimony of the Government's fact-witnesses." *United States v. Tapia-Ortiz*, 23 F.3d 738, 740 (2d Cir. 1994).

During the course of her testimony, the Government's expert informed the jury that drugs "[t]ypically" come to Rochester from "New York City" in "vehicles with hidden compartments," which are driven by individuals who use "bug detector[s]" to engage in "countersurveillance activities." J. App'x at 943, 947, 950-51. This testimony mirrored the Government's evidence, which showed that Solano-Fell was arrested in Yonkers, New York, that his car had a "secret compartment" that contained drugs, and that he possessed a "bug detector." The jury arguably

6

did not require expert testimony to understand the significance of a secret compartment. *See Castillo*, 924 F.2d at 1233. Moreover, although the Government's expert could have usefully explained what a "bug detector" is, the jury likely did not need further instruction on the potentially criminal uses of such a device. When the Government's expert connected these pieces of evidence in her account of a typical Rochester drug dealer, she did not simply assist the jury by explaining unfamiliar terms or concepts, but also appears to have implicitly encouraged the jury to draw the Government's preferred inferences, effectively serving as a "summary prosecution witness." *United States v. Dukagjini*, 326 F.3d 45, 55 (2d Cir. 2003). The district court arguably should not have permitted such testimony.

Finally, we turn to Solano-Fell's argument that the district erred by concluding at sentencing that he was responsible for the distribution of between 50 and 150 kilograms of cocaine. "We review a sentencing court's factual findings regarding drug quantity only for clear error." *United States v. Richards*, 302 F.3d 58, 68 (2d Cir. 2002). In a drug conspiracy case, "a defendant is accountable only for quantities 'with which he was directly involved' and . . . for 'reasonably foreseeable quantities' within the scope of [jointly undertaken] activity." *United States v. Chalarca*, 95 F.3d 239, 243 (2d Cir. 1996) (quoting U.S.S.G. § 1B1.3 cmt. n.2). "Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." U.S.S.G. § 2D1.1 cmt. n.5. Here, Speight testified that he had purchased five to seven kilograms from Manolo Rijo and Solano-Fell every other week from 2003 to 2007. This testimony indicated that Solano-Fell was "directly involved" in the distribution of hundreds of kilograms of cocaine. The district court did not err, much less clearly err, by attributing only a fraction of that quantity to Solano-Fell.

7

We have considered Solano-Fell's remaining arguments and find them to be without merit. For the reasons stated herein, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK