20-4275-cr
United States v. Ramos

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 17th day of May, two thousand twenty-two.

PRESENT:
> BARRINGTON D. PARKER,
> MICHAEL H. PARK,
> EUNICE C. LEE,
> *Circuit Judges.*

---

UNITED STATES OF AMERICA,

     *Appellee*,

     v.                                 20-4275

GREGORY RAMOS, a/k/a PROSPECT,

     *Defendant-Appellant.*

---

| | |
|---|---|
| **FOR DEFENDANT-APPELLANT:** | HERBERT L. GREENMAN, Lipsitz Green Scime Cambria LLP, Buffalo, NY. |
| **FOR APPELLEE:** | MONICA J. RICHARDS, *for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY. |

Appeal from a judgment of the United States District Court for the Western District of New York (Vilardo, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

On August 23, 2016, the grand jury returned an indictment charging Defendant Gregory Ramos with four counts: (1) possession with intent to distribute cocaine base, 21 U.S.C. § 841(b)(1)(C); (2) possession with intent to distribute cocaine, 21 U.S.C. § 841(b)(1)(C); (3) unlawful possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A)(i); and (4) unlawful possession of a firearm by a person subject to a domestic violence order of protection, 18 U.S.C. § 922(g)(8).

For count 1, the government's theory at trial was that on August 14, 2015, Ramos led police on a high-speed chase in Buffalo, New York, during which he threw baggies containing cocaine base, heroin, and butyryl fentanyl from his vehicle.[1] As to counts 2–4, the government proffered evidence showing that on May 23, 2016, Ramos led police officers on another high-speed chase through the City of Niagara Falls. During the chase, Ramos threw a bag with ammunition and a loaded gun out of the car, which law enforcement later recovered. He also threw a second bag out of the car containing an unknown quantity of white powder, which dissipated after hitting a pursuing police vehicle. Ramos was eventually arrested with two cell phones and $3,640 in cash on his person. Police also searched Ramos's vehicle and recovered a small amount of cocaine coating the interior of the vehicle as well as a digital scale with white residue, 200 plastic vials, an additional $804 in cash, and two tablet computers and a phone containing messages related to drug trafficking.

---

[1] Ramos was not charged with the heroin and butyryl fentanyl conduct.

A jury found Ramos not guilty of count 1 and guilty on counts 2–4. Ramos filed two sets of post-trial Rule 29 and Rule 33 motions, which the district court denied. Ramos timely appealed and now raises the same arguments he made in his post-trial motions. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Ramos raises five arguments on appeal, all of which are meritless. *First*, Ramos argues that there was insufficient evidence to convict him of possession of cocaine with intent to distribute or possession of a firearm in furtherance of a drug trafficking crime. As to count 2, Ramos argues that the small amount of cocaine recovered (0.56 grams) raises "no inference of an intent to distribute." Appellant's Br. at 30. But, "view[ing] the evidence in the light most favorable to the government, [and] drawing all inferences in the government's favor," *United States v. Alston*, 899 F.3d 135, 143 (2d Cir. 2018) (citation omitted), the circumstantial evidence was sufficient for a rational jury to have found that (1) the reason a small amount of cocaine was recovered was because Ramos discarded the cocaine during the police pursuit, and (2) he intended to distribute the discarded cocaine. Ramos was found with multiple cell phones and over $3,000 in cash on his person, and his car contained a scale with white residue, plastic vials consistent with those used to distribute drugs, and multiple electronic devices with messages related to drug trafficking. Moreover, the fact that Ramos discarded the bag with white powder while being chased by the police shows consciousness of guilt.

As to count 3, Ramos argues that there was no nexus between the firearm and the drug trafficking crime. But there was sufficient evidence for the jury to convict Ramos on the firearm count. "[A] drug dealer may be punished under [18 U.S.C.] § 924(c)(1)(A) where the charged weapon is readily accessible to protect drugs, drug proceeds, or the drug dealer himself." *United States v. Snow*, 462 F.3d 55, 62–63 (2d Cir. 2006). Determining whether a firearm was used as

3

protection for drug-dealing activity is a fact-intensive question. *Id.* at 63. Here, before Ramos discarded the firearm, it was loaded and located in his vehicle, which contained drugs, drug proceeds, and drug paraphernalia. There was thus sufficient evidence that Ramos's possession of the firearm "facilitated or advanced the instant drug trafficking offense by protecting himself, his drugs, and his business." *Id.* (cleaned up); *see also id.* (concluding there was sufficient evidence for a conviction under 18 U.S.C. § 924(c)(1)(A) where loaded handguns were found in the bedroom where drugs were packaged and stored for sale and in close proximity to drug paraphernalia, trace amounts of illegal narcotics, and drug proceeds).

*Second*, Ramos raises 19 instances of defense counsel allegedly providing him with ineffective assistance of counsel. We affirm the district court's finding that Ramos failed to show that he was prejudiced by these various errors. In his brief, Ramos states only that "all of the examples listed above were injurious to the defense" and does not explain how any specific example prejudiced him. Appellant's Br. at 38. For instance, Ramos argues that defense counsel was deficient for opening the door to testimony about drug-related messages on his Facebook account and for failing to investigate whether his Facebook account actually contained those messages. But Ramos fails to explain how he was prejudiced by these alleged shortcomings when the same witness that testified about the Facebook messages also testified about drug-related text messages—unrelated to his Facebook account—that were on Ramos's phone. In light of the strong evidence against Ramos presented at trial, we conclude that Ramos did not show that "there is a reasonable probability that, but for counsel's [alleged] unprofessional errors, the result of the proceeding would have been different." *United States v. DiTomasso*, 932 F.3d 58, 69 (2d Cir. 2019) (citation omitted).

4

*Third*, Ramos argues that the district court abused its discretion by admitting the testimony of two government witnesses, Officer Cory Higgins and Agent James McHugh, because their expert testimony was not beyond the ken of the jury. We disagree. This Court has previously affirmed the admission of Agent McHugh's expert testimony regarding "the kinds of paraphernalia or tools that are typically found in the possession of people who are distributing narcotics."[2] *United States v. Willis*, 14 F.4th 170, 185–86 (2d Cir. 2021); *see also United States v. Tutino*, 883 F.2d 1125, 1134 (2d Cir. 1989) ("This Court has repeatedly held that the operation of narcotics dealers are a proper subject for expert testimony under Fed. R. Evid. 702." (cleaned up)). As for Officer Higgins—who testified as a lay witness—Ramos argues that he improperly veered into expert testimony and that this expert testimony was not beyond the ken of the jury. Although this Court has expressed concern when law enforcement officials testify as both fact and expert witnesses, *see United States v. Dukagjini*, 326 F.3d 45, 53–54 (2d Cir. 2003), even assuming portions of Officer Higgins's testimony were improper, "[t]he inadmissible aspects of [Higgins's] testimony, viewed in relation to the prosecution's formidable array of admissible evidence, was merely corroborative and cumulative," *id.* at 62.

*Fourth*, Ramos contends that the government committed prosecutorial misconduct in its summation by shifting the burden of proof, vouching for witnesses' credibility, putting at issue the prosecutor's own credibility, and suggesting that defense counsel did not believe its own case.

---

[2] Ramos also argues in passing that Agent McHugh did not provide information about the experience that provided the basis for his testimony and that McHugh's testimony was designed to improperly bolster the testimony of Officer Higgins. Contrary to Ramos's argument, Agent McHugh testified to the experience and expertise that provided the basis for his expert opinion about drug trafficking. Further, this testimony was also properly used to rehabilitate Officer Higgins's testimony after it was attacked by defense counsel on cross-examination. *See United States v. Cruz*, 981 F.2d 659, 663 (2d Cir. 1992) ("[T]he credibility of a fact-witness may not be bolstered by arguing that the witness's version of events is consistent with an expert's description of patterns of criminal conduct, *at least where the witness's version is not attacked as improbable or ambiguous evidence of such conduct*." (emphasis added)).

Even if we were to assume that some of the prosecutor's comments during summation were improper, Ramos does not demonstrate that they caused "substantial prejudice by so infecting the trial with unfairness as to make the resulting conviction a denial of due process." *United States v. Aquart*, 912 F.3d 1, 27 (2d Cir. 2018) (citation omitted). Ramos fails to address prejudice in his brief except in conclusory fashion. There was strong evidence against Ramos, making it likely that he would have been convicted even without the prosecutor's allegedly improper comments. And the trial court instructed the jury that the attorneys' closing statements were not evidence and that the government had the burden of proof. This is not the "rare case" where the prosecutor's summation comments were so prejudicial that relief from conviction is warranted.[3] *Aquart*, 912 F.3d at 27.

*Fifth*, Ramos argues that the district court erred because it did not sever count 1, which addressed the August 2015 incident and contained "inflammatory" evidence about butyryl fentanyl from counts 2–4, which addressed the May 2016 incident.[4] Appellant's Br. 53. Federal Rule of Criminal Procedure 14(a) states that "[i]f the joinder of offenses . . . appears to prejudice a defendant . . . the court may order separate trials of counts." "[T]he denial of a severance motion should be reversed only when a defendant can show prejudice so severe as to amount to a denial of a constitutionally fair trial or so severe that his conviction constituted a miscarriage of justice." *United States v. Blount*, 291 F.3d 201, 209 (2d Cir. 2002) (cleaned up). We conclude that the

---

[3] Ramos also argues the prosecutor committed misconduct by using evidence about butyryl fentanyl and McHugh's expert testimony in his summation. As explained above, McHugh's expert testimony was properly admitted. And Ramos cannot show prejudice from the evidence about butyryl fentanyl where Ramos was acquitted on count 1, the only count related to the butyryl fentanyl.

[4] Ramos characterizes his argument as a Rule 8 challenge, but it is more accurately characterized as a Rule 14 challenge. Rule 8 allows joinder of counts where "the offenses charged . . . are of the same or similar character." Fed. R. Crim. P. 8(a). Ramos does not argue on appeal that the offenses charged for count 1 and counts 2–4 were not of similar character. Instead, Ramos argues that the court should have severed the counts because joinder was prejudicial.

evidence about butyryl fentanyl was not so prejudicial as to constitute a denial of a constitutionally fair trial or a miscarriage of justice, especially in light of the strong evidence presented at trial on counts 2–4.

Ramos also argues that there was a retroactive misjoinder in light of his acquittal on count 1. "The term retroactive misjoinder refers to circumstances in which the joinder of multiple counts was proper initially, but later developments . . . render the initial joinder improper." *United States v. Hamilton*, 334 F.3d 170, 181 (2d Cir. 2003) (cleaned up). A defendant may be entitled to a new trial if he can show "compelling prejudice" in the form of "prejudicial spillover," which "requires an assessment of the likelihood that the jury, in considering one particular count or defendant, was affected by evidence that was relevant only to a different count or defendant." *Id.* at 182 (citation omitted). Here, Ramos fails to demonstrate prejudicial spillover where the jury acquitted him on count 1, the only count related to the butyryl fentanyl. *See id.* at 183 ("The absence of [prejudicial] spillover is most readily inferable where the jury has convicted a defendant on some counts but not on others." (listing cases)).

We have considered the remainder of Ramos's arguments and find them to be without merit. Accordingly, we affirm the judgment of the district court.

FOR THE COURT:<br>Catherine O'Hagan Wolfe, Clerk of Court

7